**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DIAL CORPORATION, Defendant.**

**Civil Action No. 99 C 3356.**

United States District Court, N.D. Illinois, Eastern Division.

April 22, 2003.

---

Jean Powers Kamp, John C. Hendrickson, John A. Knight, Noelle Christine Brennan, United States Equal Employment Opportunity Commission, Ines M. Monte, Lakeside Building Maintenance, Inc., Chicago, IL, for plaintiff.

Alexis MacDowall, Winston & Strawn, Daniel V. Kinsella, Rooks Pitts, Shayle P. Fox, Holland & Knight LLC, Chicago, IL, Dale A. Danneman, Lewis & Roca, Phoenix, AZ, for intervenor.

Kimball Richard Anderson, T. Alexis MacDowall, Winston & Strawn, James A. Burstein, Ellen E. McLaughlin, Camille Annette Olson, Condon A. McGlothlen, David Elliot Metz, Robert L. Jackson, III, Sheldon Leigh Jeter, Seyfarth Shaw, Laura Anne Lindner, Chicago, IL, for defendant.

Daniel V. Kinsella, Rooks Pitts, Chicago, IL, David T. Maddox, Schmitt, Schneck, Smyth & Herrod PC, Phoenix, AZ, for movant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 14, 2003 RULING REGARDING BIFURCATED TRIAL PROCEDURES

URBOM, Senior District Judge.

This is a case brought under the pattern-or-practice provisions of Title VII by EEOC on behalf of some 101 women for alleged sexual harassment at Dial Corporation's Aurora, Illinois, manufacturing plant.[1] Each woman has an individual claim for her compensatory and punitive damages, and declaratory and injunctive relief are sought. The class action Rule 23 of the Federal Rules of Civil Procedure is not involved. Because both pattern-and-practice assertions and individual claims are pleaded, I have previously indicated use of a phased approach in determining compensatory and punitive damages.

---

1. The number of women has been reduced to between 80 and 90 by my excluding persons claiming sex-based discrimination as distinguished from sexual harassment. *See EEOC v. Dial Corporation,* 156 F.Supp.2d 926 (N.D.Ill.2001).

In responding to a motion by the defendant for clarification of my ordering a "bifurcated trial" I cited the sources of my thinking as follows:

My primary guidance in this description of how I see the trial in the interpreting of 42 U.S.C. § 1981a (b)(1) comes from *General Telephone Company of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *BMW of North America Inc., v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Jefferson v. Ingersoll International Inc.,* 195 F.3d 894 (7th Cir.1999); *Hennessy v. Penril Datacomm Networks,* 69 F.3d 1344 (7th Cir.1995); *Shea v. Galaxie Lumber & Construction Co., Ltd.,* 152 F.3d 729 (7th Cir.1998); *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008 (7th Cir.1998); *Segar v. Smith,* 738 F.2d 1249 (C.A.D.C.1984); *Equal Employment Opportunity Commission v. Indiana Bell Telephone Company,* 256 F.3d 516 (7th Cir.2001); *United States Equal Employment Commission v. Foster Wheeler Constructors, Inc.,* 1999 WL 528200 (N.D.Ill.1999); and the dissenting opinion of Judge Reavley in *Smith v. Texaco, Inc.,* 263 F.3d 394 (2001).

I concluded that the overall scheme for disposition would comprise a configuration of four phases: In Phase I whether a pattern or practice existed and, if so, when; in Phase II whether any such pattern or practice was done with malice or reckless indifference, and if so, an amount, if any, of punitive damages to the class; in Phase III compensatory damages in the individual cases; and in Phase IV an apportionment of any punitive damages.

Dial now asks for reconsideration, based upon the Supreme Court's April 7, 2003, decision in *State Farm Mutual Automobile Ins. Co. v. Campbell,* —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), and the Ninth Circuit's reversal in *Beck v. Boeing Co.,* 60 Fed.Appx. 38, 2003 WL 683797 (9th Cir.2003). Dial argues that the *State Farm* case precludes the option of allowing a determination of punitive damages before compensatory damages have been decided. I have carefully reviewed those two cases and the parties' briefs, and conclude that there will be some change in what I previously had directed, but not to the extent that Dial asks.

■ The specific problem in this pattern-or-practice case arises from the impracticality of using a single jury for the determination of the existence of a pattern or practice, on the one hand, and the awarding of individual damages to individual claimants, on the other. The combination of Phase I and Phase II is projected to take six or seven weeks. While it is believed that Phase III, in awarding compensatory damages to individuals, may be done in relatively small groups of claimants, several juries will probably be required and the broad scope of any pattern or practice will be much narrower in the Phase III trials. For that reason, I think a determination of an amount of punitive damages for all the persons, as a group, who ultimately are found to be aggrieved by the pattern or practice should be decided by the jury in Phase I and II who has heard all the evidence regarding the nature and scope of the pattern or practice. No jury deciding compensatory damages of an individual or small group of individuals can have the same insight on what will be needed to deter the pattern or practice

on a plant-wide basis or for punishment as will the Phase I and II jury. On the other hand, the distribution of those punitive damages needs to be proportionate to the harm done to persons aggrieved, and that can best be done after a determination has been made by the Phase III juries of the compensation to be allowed to each individual. I see no way reasonably to get that accomplished without having both the insight of the Phase I and Phase II jury and the insight of the Phase III juries, as conjoined and distributed proportionately by the trial judge.

At the outset, let me note that the Supreme Court in the *State Farm* case does not say that a Phase I jury cannot return a verdict for punitive damages before compensatory damages have been awarded. Guideposts were laid down by the Court for the imposition of punitive damages to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at, 123 S.Ct. at 1524. The technique or procedure for reaching the goal of reasonableness and proportionality was not vice-gripped in a specific mold. That "usually" compensatory and punitive damages are "awarded at the same time by the same decision-maker" *Id.* at, 123 S.Ct. at 1519, does not mean that always that must be the case.

I think the emphasis of the Supreme Court is that care must be taken in the procedure used at a trial to see that the ultimate award reflects *reason*, rather than virtually unbridled discretion of a jury. The Court took pains to emphasize the judges' role—both the trial judge and the appellate judges—in deciding the ultimate amount that is to be awarded by way of punitive damages. The plan for the upcoming trial which I now articulate with further refinement is drawn to take advantage of the jury's insights, as well as the tempering hand of the judge.

■ First, Phase I should result in a finding by the jury of whether and when a pattern or practice of tolerating sexual harassment existed. Because evidence to support the claim of such a pattern or practice necessarily will include some episodes that may tend to show whether the pattern or practice was engaged in "with malice or reckless indifference to the federally protected rights" of aggrieved persons of the class, such state-of-the-mind evidence may be received at Phase I and the malice-or-reckless-indifference issue should be decided by the same jury as decides the pattern-or-practice issue. There may be some evidence that is applicable only to the issue of pattern or practice and not at all to the issue of malice or reckless indifference; such evidence, of course, should be presented in Phase I. There may be some evidence that pertains solely to the malice-or-reckless-indifference issue and that evidence should be retained until Phase II.

Phase II, if Phase I ends in the plaintiff's favor, would end with a verdict of whether the pattern or practice was done with malice or reckless indifference to the federally protected rights of the class[2] members, including an amount to be awarded to the aggrieved persons of the class as punitive damages. That will allow the jury to take into account in Phase II the evidence that pertains to the issue of pattern or practice, as well as other evidence that pertains only to the malice-or-reckless-indifference issue.

In Phase II, the jury may be told that the identity of persons who should have compensation will not be decided until a future jury decides it. The jury in Phase II should not know how many women have

---

**2.** "Class" is used without any signal that Rule 23 is involved.

filed claims and should not know that some of them have signed releases or that the validity of releases is being challenged, but will be instructed to presume that all members of the class who have valid claims have been compensated in full, so the remaining question for this jury is to determine what amount, if any, is needed for purposes of punishment and deterrence of the defendant and others.[3] A verdict as to amount should not be sealed.[4]

Phase III should resolve the issue of compensatory damages, including the subjective feature of the individual claimant, probably requiring the service of more than one jury, if numerous members of the class remain to claim compensatory damages. Each of those juries should also arrive at an amount for punitive damages for each member of the group triable to that jury, if Phase II resulted in a finding by the jury that tolerance of a pattern or practice of sexual harassment was done with malice or reckless indifference. Each jury in Phase III should know:

1. that the Phase II jury decided that the conduct of the defendant was done with malice or reckless indifference, if that was the finding, and

2. that the task of the Phase III jury is to decide (A) whether compensatory damages are warranted for each of the women in the group triable to that jury, and, if so, the amount, and (B) if the jury in Phase II found malice or reckless indifference, whether punitive damages are needed for punishment and deterrence, and, if so, the amount.

I recognize that this means there may be jury findings of amounts of punitive damages in both Phase II and Phase III. Ultimately, it is the responsibility of the trial judge, as well as the appellate judges, to control punitive damage awards.[5] The cases of *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436,

---

**3.** In *State Farm Mutual Automobile Insurance Company v. Campbell*, —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585, the Supreme Court, in discussing a court's review of punitive damages said:

It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. [*BMW of North America, Inc. v. Gore,* 517 U.S. 559] at 575, 116 S.Ct. 1589, 134 L.Ed.2d 809.

The Supreme Court was speaking of the *judge's* "presuming," but a similar admonition can be given to the jury, thereby eliminating any consideration by the Phase II jury of including any compensatory damage in a punitive damage award.

**4.** Adoption of the suggestion of Dial for sealing the verdict is not likely to survive a challenge in view of cases like *United States v. Edwards,* 672 F.2d 1289 (7th Cir.1982). Of course, the danger of effect on future Phase

III trials is real, but care can be used to select unaffected jurors for those later trials.

**5.** In examining a state-court award for punitive damages the Supreme Court in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) said at 15, 111 S.Ct. 1032:

Under the traditional common-law approach, the amount of the punitive awards is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable.

This Court more than once has approved a common-law method for assessing punitive awards. . . . (Citations omitted).
and at 17, 111 S.Ct. 1032 said:

So far as we have been able to determine, every state and federal court that has considered the question has ruled that the common-law method of assessing punitive damages does not in itself violate due process . . .

121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); *State Farm Mutual Automobile Insurance Company v. Campbell,* —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); and *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), provide guidelines in that endeavor. An overall award in Phase II will present an amount reflecting the overall reprehensibility, if any, of the defendant's conduct, which is "the most important indicium of the reasonableness of the punitive damages award ..." *Gore, supra,* at 575, 116 S.Ct. 1589. The amounts in the verdicts in Phase III will reflect more the degree of harm to the particular claimant, thus aiding the judge in Phase IV with respect to proportionality.

Phase IV may consist of the judge's deciding what distribution should be made of punitive damages, guided by both the verdicts in Phase II and Phase III. It seems to me that the verdict in Phase II would be considered a cap, so that the cumulative amounts of the verdicts of Phase III would not be permitted to exceed the amount in the verdict in Phase II.

I understand that an alternative to the plan regarding Phase II could be to allow the jury to know the number of women making claims, as well as the fact of the number of women who have signed releases and that the validity of those releases is being challenged, but has not yet been decided. I prefer the method of the jury's not knowing these features, because they will be tried out in full and reflected in the verdicts in Phase III. The shortcoming of the Phase II jury is that it does not know the validity or specifics of all the individual claims; the shortcoming of the Phase III juries is that they do not know the specifics of the defendant's plant-wide pattern or practice. Receiving verdicts from both should largely offset the weakness of each. It may also have the effect of avoiding a new trial or series of new trials if the verdicts of Phase II or Phase III are found on appeal to have been improper procedure.

I think any rigid plan of separate division by several juries or of a single verdict of punitive damages of the members of the class alone would result in guesswork decisions beyond reason. That consideration, I think, is what has led to the Supreme Court's insistence upon the judges having a key role in holding punitive damages to an award "based on an 'application of law, rather than a decisionmaker's caprice.'" *Cooper Industries, Inc., supra,* at 436, 121 S.Ct. 1678, quoting Justice Breyer's concurring opinion in *Gore, supra,* at 582, 116 S.Ct. 1589. An aspect of that role is expressed in the holding that "courts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards." *Cooper Industries, supra,* at 436, 121 S.Ct. 1678. The equitable powers of the judge would allow the trial judge to make a division of punitive damages in light of the compensatory damages, if any, the statutory cap, and the constitutional considerations of *Gore, supra,* and *State Farm Mutual, supra.* As stated in *Segar v. Smith,* 738 F.2d 1249, 1289–90 (C.A.D.C.1984):

> Although *Teamsters* certainly raises a presumption in favor of individualized hearings, the case should not be read as an unyielding limit on a court's equitable power to fashion effective relief for proven discrimination. The language of *Teamsters* is not so inflexible; after stating that individual hearings are "usually" required, *Teamsters* ..., 431 U.S. at 361, 97 S.Ct. at 1867, the Court went on to note that "[i]n determining the specific remedies to be afforded, a district court is 'to fashion such relief as the particular circumstances of a case may require to effect restitution.'" *Id.* at 364, 97 S.Ct. at 1869, quoting *Franks,*

*supra,* 424 U.S. at 764, 96 S.Ct. at 1264. Later courts have often faced situations in which the *Teamsters* hearing preference had to bend to accommodate Title VII's remedial purposes ...

Division of punitive damages awarded by a jury or juries has the same demand on need as does restitution. Bending for accommodating remedial purposes is appropriate in this case.

IT IS ORDERED that:

1.  the Defendant's Motion for Reconsideration of This Court's February 14, 2003 Ruling Regarding Bifurcated Trial Procedures, filing 399, is denied; and

2.  the trial shall be conducted essentially in the manner set out in the foregoing memorandum, subject to alterations that may come to be needed.