EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff

v.

PERFORMANCE FOOD GROUP, INC., Defendant.

Civil Action No. MJG–13–1712.

United States District Court, D. Maryland.

Filed March 11, 2014.

See, also, 16 F.Supp.3d 584, 2014 WL 1760936.

Debra Michele Lawrence, Gwendolyn Young Reams, Lindsey Anne White, Maria Salacuse, Tanya Lea Goldman, and David John Staudt, U.S. Equal Employment Opportunity Commission, Baltimore, MD, for Plaintiff.

Jean L. Schmidt, Rosemary P. Joyce, Littler Mendelson, PC, New York, NY; Kevin Michael Kraham, Littler Mendelson,

PC, Washington, DC; and Kristin R. Culbertson, Littler Mendelson, PC, Phoenix, AZ for Defendant.

### MEMORANDUM AND ORDER RE: BIFURCATION

GARBIS, District Judge.

The Court has before it Plaintiff EEOC's Motion to Bifurcate Discovery and Trial, and to Enter the EEOC's Proposed Order Regarding Bifurcation and Scheduling and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

### I. SUMMARY

At all times relevant hereto, Defendant Performance Food Group, Inc. (including related entities) ("PFG") has been engaged in the business of supplying food and other products to restaurants, hotels, and other food retailers. The "Broadline Division" of PFG is comprised of multiple operating companies, or distribution centers, that "distribute[ ] a broad array of national and proprietary brand food and related products" to independently-owned restaurants, certain corporate-owned and franchisee chain locations, and non-commercial customers. Am. Compl. ¶¶ 5, 8.

On March 23, 2010, the Court issued a Summons Enforcement Order relating to a then-ongoing United States Equal Employment Opportunity Commission ("EEOC") investigation of alleged discriminatory employment practices on the part of the entity now identified as "Performance Food Group, Inc." and/or related entities. *See* Case No. 1:09–cv–02200–MJG [Document 33]. The EEOC has, by the instant lawsuit, filed claims in two Counts against PFG:

- Count One: Alleging an ongoing pattern or practice of gender-based discrimination for failing to hire a class of female applicants for certain positions at PFG's warehouses.
- Count Two: Alleging a failure to promote a female employee, Julie Lawrence, to a supervisory position because of her sex.

By the instant motion, the EEOC seeks an order bifurcating the case for discovery and trial.

### II. DISCUSSION

#### A. Count One—Pattern or Practice of Discrimination

##### 1. Bifurcation

■ The parties agree in principle that resolution of the claims presented in Count One should proceed in two phases. *See* [Documents 25, 27]. The Court concurs and finds that bifurcation of the proceedings relating to Count One is appropriate.

The proceedings relating to Count One shall be bifurcated into two phases:

(1) Phase One—To resolve class-wide issues.

(2) Phase Two (as necessary in light of Phase One results)—To resolve claims on behalf of individuals.

##### 2. Phase One—Class–Wide Issues

The parties present different views regarding the matters to be resolved in Phase One. In particular:

(1) Whether, to the extent that the EEOC establishes a pattern or practice of discrimination, Phase Two proceedings shall be conducted pursuant to the *McDonnell Douglas*[1] framework or the *Teamsters*[2] burden-shifting framework.

---

1. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

2. *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

(2) Whether punitive damages shall be determined in Phase One.

(3) Whether certain possible defenses applicable to specific individuals will be resolved in Phase One.

The Court shall address these matters in turn.

### a. *The Effect of a Pattern or Practice Finding*

■ The Court presently intends to follow the decision of the U.S. Court of Appeals for the Sixth Circuit in *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir.2012). Hence, to the extent that the EEOC establishes the alleged pattern or practice, the Court will allow the EEOC to proceed in Phase Two pursuant to the *Teamsters* burden-shifting framework.

Should there be a change in the precedential climate prior to the commencement of Phase Two, the Court may reconsider this decision. However, regardless of the burden of proof scheme ultimately utilized in Phase Two, Phase One will include a determination of the existence and scope of any pattern or practice of discrimination as alleged by the EEOC.

### b. *Punitive Damages*

In Count One, the EEOC asserts a claim for punitive damages[3] on behalf of those individuals who were harmed by PFG's alleged discriminatory pattern or practice of failing to hire women for certain positions. Therefore, there could ultimately be awards of punitive damages in favor of some individuals.

The Court must adopt a procedure for resolution of the EEOC's Count One punitive damages claim that, while efficient from a case management point of view, does not violate PFG's (or the individuals') rights. Simply stated, if this Court is going to enter a judgment against PFG for punitive damages, that judgment must be obtained with due regard to PFG's rights.[4]

The Court must bear in mind that an award of punitive damages to an individual is dependent upon a jury finding that PFG acted with malice or reckless indifference to that individual's federally protected rights. Such a jury finding *allows, but does not require,* a jury to award punitive damages. As stated in typical jury instructions relating to punitive damages in Title VII actions, a jury finding for a plaintiff "may, but [is] not required to, award … punitive damages." *See, e.g.,* 5–88 Hon. Leonard B. Sand et al., Federal Jury Instructions (Civil) Instruction ¶ 88.03 (2011). Furthermore, the jury exercises its discretion in determining the amount of punitive damages to award to a particular plaintiff. *See id.* Of course, the jury's punitive damages award is subject to judicial review because the amount of any punitive damages award must be "reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 426, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *see also Philip Morris USA v. Williams,* 549 U.S. 346, 352, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007).

---

**3.** In addition to compensatory damages.

**4.** The decision of the Supreme Court of Florida, in *Engle v. Liggett Group, Inc.,* 945 So.2d 1246 (Fla.2006), while presenting issues different from those in the instant case, is illustrative of the problem inherent in the EEOC's proposed procedures. *Engle* involved a class action brought on behalf of smokers against

cigarette manufacturers, and the jury awarded class-wide punitive damages in the amount of $145 billion. 945 So.2d at 1257. On appeal, the class-wide punitive damages award was reversed, the class was decertified, and the thousands of individual claimants were required to proceed in separate trials. *See id.* at 1268–70.

The EEOC presents two alternative approaches to resolution of its punitive damages claim.

(1) The Class–Wide Award: The Phase One jury would decide whether to award punitive damages and the total amount of punitive damages to be awarded (by a subsequent apportionment of the grand total by the Court) to those persons to whom, in Phase Two, PFG would be found to be liable.[5]

(2) The Eligibility Determination: The Phase One jury would determine "eligibility" for punitive damages and the Phase Two jury could award punitive damages on an individual basis.[6]

The Court finds neither approach acceptable.

(i) *The Class–Wide Award Approach*

█ The EEOC contends that the Phase One trial should include its claim for punitive damages on behalf of the class of alleged individual discriminates. That is, the EEOC contends that the Phase One jury can award a collective punitive damages award. *See* [Document 25–1] at 5–6. This total award would be allocated to those individuals on whose behalf the EEOC would prevail in Phase Two.

The EEOC presents the procedure in *E.E.O.C. v. Dial Corp.*, 259 F.Supp.2d 710 (N.D.Ill.2003) as an example of a class-wide punitive damages procedure. *See* [Document 25] at 8; [Document 36] at 9–10. In *Dial*, the district court divided the case into four phases,

- Phase I [Jury finding]—Did a pattern or practice of discrimination exist and, if so, when? *Dial*, 259 F.Supp.2d at 713.

- Phase II [Same jury finding]—Was the pattern or practice done with malice or reckless indifference, and, if so, what is the amount of punitive damages to award to the class? *Id.*

- Phase III [Separate juries]—Whether, as to each individual in the group, compensatory damages are awarded and, if so, the amount and "whether punitive damages are needed for punishment and deterrence, and, if so, the amount." *Id.* at 714.

- Phase IV [The judge]—"[M]ay consist of the judge's deciding what distribution should be made of punitive damages, guided by the verdicts in Phase II and Phase III." *Id.* at 715.

The Court finds the EEOC class-wide award approach not only unworkable, but

---

**5.** As to the class-wide award approach, the EEOC states:

> The first phase of this case ("Stage I") would consist of liability with respect to the pattern or practice failure to hire claims, (2) liability and damages for Julie Lawrence's failure to promote claim, (3) a determination as to whether punitive damages are warranted and if so, determination of a class-wide amount, and (4) injunctive relief.... The Stage II jury would then determine compensatory damages, back and front pay for the class members. At the end of the Stage II trial, the Court would make appropriate apportionment among the claimants of the punitive damages awarded to EEOC from Stage I, if any.

[Document 25–1] at 1–2.

**6.** As to the eligibility determination approach, the EEOC states:

> In the alternative, the Commission proposes a bifurcation framework where the Stage I jury determines entitlement—but not a class wide amount—to punitive damages.... This structure moots many of Defendant's concerns because a jury would not award any compensatory or punitive damages unless it first determined class membership. Further, the same juries would award compensatory and punitive damages.

[Document 31] at 22.

also violative of the rights of PFG and, potentially, the rights of those individuals on whose behalf the EEOC has made a claim.

Under the proposed class-wide approach, a first jury would exercise its discretion to make a class-wide punitive damages award without determining the total number of individuals to whom PFG must pay punitive damages or the compensatory damages—presumably indicative of the harm done—due to those individuals.

Then, as to each individual, a separate (*Dial* Phase III) jury would determine—presumably exercising its own discretion—whether to award punitive damages to that individual and, if so, the amount.

Finally, the trial court would somehow determine how to distribute the punitive damages to be paid by PFG guided by the verdicts in *Dial* Phase II and *Dial* Phase III. This means that the verdict of the *Dial* Phase III jury making a punitive damages award to a particular individual could be "adjusted" [7] by the trial court considering—somehow—the class-wide total punitive damages award of the *Dial* Phase II jury and the total of all of the punitive awards made by all of the *Dial* Phase III juries to all individuals. This process may well require deferring a final decision on a punitive damages award to any individual until after the determination of all punitive damages awards. Moreover, the process effectively renders the *Dial* Phase II class-wide punitive damages verdict meaningless, or possibly even counter-productive.

There appears to be no basis on which PFG could be required to pay more in punitive damages to an individual than the amount determined by a *Dial* Phase III jury to be due to that individual. Therefore, if a *Dial* Phase II jury's class-wide punitive damages award exceeds the sum of all of the *Dial* Phase III juries' awards, there would be an excessive *Dial* Phase II award. Thus, the *Dial* Phase II jury's class-wide punitive damages award would have no effect.

A more serious problem would exist if a *Dial* Phase II jury's class-wide punitive damages award were less than the sum of all of the *Dial* Phase III juries' awards. In this circumstance, unless the *Dial* Phase II jury's class-wide award were ignored, the *Dial* Phase III juries' individual punitive damages awards would not be fully effective. Either all such awards would have to be reduced pro-rata or, presumably on a first-come first-served basis, some would not be paid at all. This situation presents serious issues. Would each individual award be deferred until all were resolved so that a pro-rata reduction could be applied? Would the individual awards found to be reasonable be paid on a first-come first-served basis until the class-wide award is exhausted? Could PFG somehow be required to pay a total of punitive damages to individuals greater than the *Dial* Phase II jury's class-wide award?

This Court shall not adopt the class-wide punitive damages award scheme as proposed by the EEOC.

The Court agrees completely with Judge Arcara of the U.S. District Court for the Western District of New York when he stated:

> [T]he EEOC's proposed scheme of assessing punitive damages on a class-wide

---

7. Reference here is to some sort of adjustment other than a legally permissible decrease to insure that the award is reasonable and proportionate to the amount of harm done to the individual and the general damages recovered. It does not appear that the trial court would have the authority to increase a *Dial* Phase III jury's discretionary determination of a punitive damages award.

basis before any determination is made as to the actual harm caused by that policy is inconsistent with the principles articulated in *State Farm* and *Philip Morris USA*. Rather than ensuring a "proportional relationship" between compensatory and punitive damages, as *State Farm* instructs, the EEOC's plan seeks to completely divorce any relationship between those determinations.

*E.E.O.C. v. Sterling Jewelers Inc.,* 788 F.Supp.2d 83, 89–90 (W.D.N.Y.2011).

### (ii) *The Eligibility Determination Approach*

█ The EEOC proposes, as an alternative to a class-wide punitive damages award, a process in which a first phase jury determines class-wide entitlement— but not a class-wide amount—to punitive damages. *See* [Document 31] at 22.

A somewhat similar procedure was accepted by the district court in *E.E.O.C. v. Pitre, Inc.,* 908 F.Supp.2d 1165 (D.N.M. 2012).[8] The *Pitre* district court divided the case into two phases:

- Phase I [Jury finding]—Did a pattern or practice exist and, if so, was the pattern or practice done with malice or reckless indifference? *Pitre,* 908 F.Supp.2d at 1178.
- Phase II [Separate juries]—Whether, as to each individual in the group, compensatory damages are awarded and, if so, the amount, and whether punitive damages shall be awarded and, if so, the amount. *Id.* at 1178–79.

The Court finds the *Pitre* procedure to present serious issues regarding the validity of any punitive damages award that might result.

A finding of malice or reckless indifference can be said to determine "eligibility" for punitive damages because that finding is a prerequisite for a *possible* punitive damages award. However, that finding does not *entitle* a claimant to punitive damages. Rather, to make a valid punitive damages award in favor of an individual, a jury must make a finding that the defendant violated the individual's rights with malice or reckless indifference *and,* based on that finding, *exercise its discretion* to make the award.

An effective *Pitre* Phase I class-wide finding of malice or reckless indifference binding every *Pitre* Phase II jury would require a finding that, *as to each and every individual* who would be found to have been discriminated against, PFG acted with malice or reckless indifference to her rights. A finding that PFG acted with malice to most, or even the vast majority, of the individuals would not bind a *Pitre* Phase II jury in regard to a particular individual.

Moreover, even if there were a *Pitre* Phase I jury finding of universal malice or reckless indifference, there would be serious issues presented. To award punitive damages to an individual, (1) a jury must find that PFG applied the alleged pattern or practice to the detriment of *that individual* with malice or reckless indifference *and* (2) based upon that finding and other considerations, the jury must decide to exercise its discretion to make an award of an amount determined appropriate *for that individual.*

A *Pitre* Phase II jury exercising its discretion to make the punitive damages award would not have been the *Pitre*

---

**8.** *See also E.E.O.C. v. Outback Steak House of Fla., Inc.,* 576 F.Supp.2d 1202, 1205–07 (D.Colo.2008) (adopting a procedure whereby, in Phase I the jury would determine eligibility for punitive damages and in Phase II a jury would determine the amount of compensatory and punitive damages for each individual).

Phase I jury that made the finding of malice or reckless indifference on which the punitive damages award was based.

A *Pitre* Phase II jury bound by a *Pitre* Phase I jury's determination that PFG acted with malice or reckless indifference in regard to the individual that the *Pitre* Phase II jury was considering would not be basing its exercise of discretion upon its own finding of malice or reckless indifference. Nor would the *Pitre* Phase II jury be able to consider, in regard to its discretionary decision, the degree of malice or reckless indifference pertinent to the individual issue. Hence, there would, inevitably, be a serious issue whether, under the *Pitre* procedure, PFG would be deprived of its Seventh Amendment right to trial by jury.

Accordingly, there shall not be a classwide eligibility determination.

(iii) *The Procedure For the Instant Case*

In view of the foregoing discussion, Phase One shall consist of a determination of the extent to which, if at all, the EEOC can establish its pattern or practice claim. This issue shall be tried to a single Phase One jury.

To the extent that the EEOC prevails in Phase One, the case shall proceed to Phase Two to resolve the claims made with regard to specific individuals.

### 3. *Phase Two—Claims on Behalf of Individuals*

As appropriate in light of the results of Phase One, there shall be Phase Two discovery and resolution of any summary judgment motions on individual claims,[9] followed by a series of trials, to determine as to each individual:

1. Whether the individual is entitled to compensatory damages and, if so, the amount;

2. Whether the individual's rights were violated by PFG with malice or reckless indifference and, if so:

  a. Whether the jury exercises its discretion to award punitive damages and, if so,

  b. The amount of any punitive damages the jury, in its discretion, decides to award; and

3. Such other relief, if any, that shall be provided to the individual.

### B. *Count Two—Failure to Promote Julie Lawrence*

■ The parties agree that all issues pertaining to Count Two shall be tried without bifurcation. Tr. Jan. 7 at 107:2–108:9.

Discovery regarding claims in Count Two and Phase One of Count One shall proceed simultaneously. The Court shall determine, in light of circumstances existing at a later stage of these proceedings, whether there shall be a joint trial or separate trials of Phase One of Count One and of all claims regarding Julie Lawrence, including claims for compensatory and punitive damages.

### III. *CONCLUSION*

For the foregoing reasons, Plaintiff EEOC'S Motion to Bifurcate Discovery and Trial is GRANTED IN PART.

---

**9.** In groups, to the extent appropriate.