PATRICK E. HIGGINBOTHAM, Circuit Judge,
on behalf of the panel, responding to the dissent from denial of rehearing en banc:
Ignoring the independent role of the EEOC when it sues on behalf of the United States government, Bass Pro asks us to hold as a matter of law that damages authorized by the 1991 amendments to the Civil Rights Act can only be recovered in individual suits. That position finds no support in the text of Title VII, its amendments, or the Supreme Court’s cases applying them.
The EEOC files fewer than 2% of the suits filed under Title VII of the 1964 Civil Rights Act, leaving the balance to suits by individuals to whom it grants a right to sue when its conciliation efforts fail.[1] Its charge is pursuit of systemic and embedded practices violative of the Act. Before the 1991 amendments, it pursued these systemic violations with suits seeking remedies calculated to avoid the chill of white jurors, such as awards of back pay. Proof of intentional discrimination conformed to its duty to prove that the violations were not discrete or episodic, but were employer practice across a range such as hiring or promotion. At the same time, suits by individuals proceeded with a judicially crafted minuet that focused upon discrete and episodic decisions the individuals complained of. Both were modes of proof of intentional discrimination. With the 1991 amendments, Congress gave to the EEOC the power to wield additional remedies.[2] It added compensatory damages, and for intentional discrimination proved to be in willful and reckless violation of the law, punitive damages.[3]
In this suit filed by the EEOC, not by individuals, Bass Pro seeks to escape the reach of the damages provision of the 1991 *226 amendments. It argues that pattern-or-practice proof must be limited to the equitable remedies such as injunctions or back pay—that is, that punitive and compensatory damages may be awarded only in trials by individuals before separate juries. Its conclusion, pointing to class actions under the federal rules, is that such a process with the hundreds of persons injured by any found pattern or practice cannot be managed. Hence, the argument goes, Congress cannot have intended that the remedies of the 1991 amendments be available in “pattern-or-practice suits.”
As we will explain, this bold definition of an anemic EEOC is deeply flawed. Its core premise, that the EEOC’s power, to enforce the 1991 amendments is derivative of individual victims, has been thrice rejected by the Supreme Court. And its effort to treat “pattern or practice” as a distinct claim rather than a mode of proving intent is a transparent side-stepping of this precedent.
I.
Bass Pro’s argument rests upon a fundamental premise: that the EEOC’s enforcement authority and choice of remedies is tethered to the individuals for whose benefit it seeks relief. That premise is false.
The Supreme Court has repeatedly been confronted with requests by employers to constrain the EEOC’s authority in ways not unlike Bass Pro’s present request. In Occidental Life Insurance Company of California v. EEOC, an alleged discriminator argued that because the EEOC’s authority to file suit is derivative of the rights of discrimination victims, the EEOC’s ability to file suit should be constrained by the state statute of limitations that would have applied had the individual herself filed suit.[4] Not so, the Court said; “the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties,” and no strict time limitation outside of Title VII applies to it.[5] In General Telephone Company of the Northwest v. EEOC, an alleged discriminator argued that when the EEOC brings an action attacking a company-wide policy or practice of discrimination in violation of Title VII, it must comply with Federal Rule of Civil Procedure 23 governing class actions.[6] Not so, the Court said; “the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23.”[7]
[T]he EEOC is not merely a proxy for the victims of discrimination!;,] and [] the EEOC’s enforcement suits should not be considered representative actions. ... When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.[8]
The Court explained that it was “[ajgainst the backdrop of [its] decisions in Occidental and General Telephone [that] Congress expanded the remedies available in EEOC enforcement actions in 1991 to include compensatory and punitive dam *227 ages.”[9] Employers again challenged the independent role of the EEOC. In EEOC v. Waffle House, an alleged discriminator argued that an arbitration agreement signed by a discrimination victim precluded the EEOC from judicially pursuing relief on behalf of that individual.[10] Not so, the Court said:
[Pjursuant to Title VII ..., whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief.... [T]he EEOC does not stand in the employee’s shoes.[11]
Accordingly, no arbitration agreement stands in the way of the EEOC when it files suit in its own name to enforce the law.[12] In reaching this conclusion, the Court viewed the contention as a challenge to the EEOC’s authority to identify the embedded and large practices in seeking punitive damages, not as the award of an individual, but in vindication of all the victims of the practice: “[pjunitive damages may often have a greater impact on the behavior of other employers than the threat of an injunction.”[13] Further accenting the independence of the EEOC when drawing on its statutory power to sue in its own name, the court referenced the “substantive statutory prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit.”[14]
Drawing upon this principle of the independence of the EEOC, this circuit and others have held that the EEOC is free from still other constraints that would otherwise burden private litigants. In EEOC v. Board of Supervisors for the University of Louisiana System, we held that the Eleventh Amendment did not protect the University of Louisiana from a lawsuit by the .EEOC because “sovereign immunity under the Eleventh Amendment operates only to protect States form private lawsuits—not from lawsuits by the federal government.”[15] Relying on Waffle House, the court noted that “the Supreme Court, albeit in a different context, has recognized that the EEOC plays an independent public interest role that allows it to seek victim-specific relief—even when such relief could not be pursued by the employee.”[16] In EEOC v. Sidley Austin LLP, the Seventh Circuit held that the EEOC could seek relief on behalf of individuals even though those individuals had failed to timely file administrative charges on their own behalf.[17] That court noted that it had previously held the opposite, but that Waffle House had the effect of overturning that *228 prior decision.[18] As Judge Posner explained, Waffle House controlled because it established that the EEOC’s “enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole.”[19]
Also part of the “backdrop” against which the 1991 civil rights amendments were passed was the Supreme Court’s decision that aggregated complaining parties suing under § 706 of the Civil Rights Act could use a modified burden-shifting approach, different from that the Court had announced in McDonnell Douglas[20] This new approach would come to be known later as the “pattern or practice method of proof.”
Nonetheless, Bass Pro brings us yet another challenge intended to limit the enforcement authority of the EEOC. Like the employers before it, it does “not welcome the prospect of [ ] liability.”[21] But the response is the same: if the conduct is there, “the law provides for such liability and the EEOC’s authority to sue for it.”[22] This time, we are faced with the argument that when the EEOC intends to use the Franks-Teamsters, or “pattern or practice,” method of proof, it cannot seek the types of damages that the 1991 civil rights amendments authorized it to seek—compensatory and punitive damages. Bass Pro’s argument in support of this position runs along two broad lines, both of which depend on the underlying premise, that the EEOC’s enforcement power is derivá-five of individuals, here refuted: first, that the text of Title VII does not authorize the use of the pattern-or-practice model in connection with compensatory and punitive damages; and second, that even if it did, such a case could not be constitutionally managed. Neither persuades.
II.
First, Bass Pro seeks support in the structure and language of the statutes authorizing the EEOC to file lawsuits, which as we will explain, when fully stated is not its friend. We begin with a brief history of the Civil Rights Act.
In 1964, Congress passed the Civil Rights Act, prohibiting employers from discriminating on the basis of race, color, religion, sex, or national origin.[23] Section 705 of the Act created the EEOC,[24] and § 706 gave the EEOC some enforcement powers, but those enforcement powers included only the informal methods of “conference, conciliation, and persuasion,” not the power to sue.[25] Under the original version of § 706, only “the person claiming to be aggrieved” could sue.[26] Simultaneously, responding to embedded practices of discrimination, Congress in § 707 of the Act authorized the Attorney General to file a lawsuit against “any person or group of. persons [ ] engaged in a pattern or practice of resistance to the full enjoyment of *229 any of the rights secured by [Title VII].”[27] Eight years later, in 1972, Congress determined that failing to give the EEOC meaningful enforcement powers was a major flaw in the operation of Title VIL[28] It remedied that flaw in two ways. First, it added to § 706’s grant of EEOC enforcement powers the power to sue.[29] Second, it transferred § 707’s power to attack embedded systemic discrimination from the Attorney General to the EEOC.[30] In 1977, the Supreme Court decided Occidental, then in 1980 decided General Telephone, both discussed above, and both emphasizing the independence of the EEOC as an enforcement agency.[31] In 1991, “[a]gainst the back drop of ... Occidental and General Telephone,”[32] Congress amended the Civil Rights Act to add the availability of compensatory and punitive damages to “the complaining party under Section 706” in cases of intentional discrimination.[33] “Complaining party” was defined as “the [EEOC], the Attorney General, or a person who may bring an action or proceeding under title VII.”[34]
The dissent says that “[§ ] 706 contains not one word suggesting that it is a proper place for a ‘pattern or practice’ claim,” see infra. This ignores the history of Title VII and allocation of the power at issue. The power to attack deeply embedded racial discrimination practices has always been reserved for the federal government, first to the Attorney General, then transferred to the EEOC. The EEOC already had this power and duty when the 1991 amendment specifically granted it the ability to recover compensatory and punitive damages as a complainant; these remedies were supplied to the EEOC as the EEOC. That is, long before the 1991 amendment, the EEOC had the power to strike at patterns and practices of discrimination; this amendment only added remedies.
Bass Pro rests its textual argument on its observation that “§ 707 contains the words ‘pattern or practice of [discrimination]’; § 706 does not.” Thus, it reasons, when Congress added the availability of compensatory and punitive damages to lawsuits brought under § 706, it must have meant to preclude recovery of those types of damages when the EEOC utilizes the Franks-Teamsters method of proof, which is sometimes called the pattern-or-practice method. This argument, wholly embraced by the dissent, improperly conflates “pattern or practice” as it is used in § 707 with “pattern or practice” as it is used to describe the Franks-Teamsters method for structuring evidence of intentional discrimination, confounding the description of the targeted evil with the necessary model deployed to prove intent.
One need look no further than the genesis of the Franks-Teamsters method of proof to understand the fallacy in Bass Pro’s position. Until 1976, we had only the McDonnell Douglas burden-shifting stan *230 dard for structuring proof of intentional discrimination in Title VII cases.[35] In 1976, the Court announced an alternative framework in Franks v. Bowman Transportation Company.[36] Under this new framework, the plaintiff would bear the initial burden of “demonstrating the existence of a discriminatory hiring pattern and practice” by the employer, then the employer would bear the burden of proving that any given individual “was not in fact discrimi-natorily refused employment.”[37] Franks was a private class action brought under § 706.[38] The EEOC was not a plaintiff, and § 707 had no role to play. Yet Bass Pro would have us believe, and the dissent agrees, that ■ this burden-shifting framework for structuring an intentional-discrimination ' trial is somehow linked to § 707—a statute wholly irrelevant to the case in which the framework was established. That is untenable.
The next year, in Teamsters, the Court approved of the deploy by the EEOC of the Franks model of proof.[39] In doing so, the Court carefully observed that “[t]he ‘pattern or practice’ language in § 707(a) of Title VII ... was not intended as a term of art.”[40] This has led courts, including the dissent, to refer to the method of proof established by Franks as the “Teamsters framework” or the “Teamsters method of proof.”[41] But as the Supreme Court itself has said, Franks is the true origin of the model of proof, not Teamsters[42]
Because of this Teamsters case, some courts, commentators, and litigants have come to describe actions brought by the EEOC under § 707 and making use of the Franks-Teamsters burden-shifting framework as “pattern-or-practice claims.” But “pattern or practice” is not a freestanding cause of action, it is a method of proving a claim of intentional discrimination.[43] The dissent commits exactly this error, claiming “[§ ] 707 contains not one word suggesting that it is a proper place for a ‘pattern or practice claim’ under the Teamsters framework,” see infra n.6, and “[c]ompensatory and punitive damages were actually, in fact, enacted in § 706 claims but actually, in fact, not enacted in § 707 pattern-or-practice claims,” see infra. And this association gives rise to the intuitive, but false, conceptual link between the “pattern or practice” method of proof and the similar language in § 707. But there is no such link. The Supreme Court has reaffirmed multiple times, including recently, that the pattern-or-practice method of proof is not limited to EEOC actions under § 707.[44] This authority di *231 rectly contradicts the position advanced by Bass Pro, urging us to limit the EEOC’s use of the Franks-Teamsters method of proof to actions brought under § 707. However, once the language of § 707 is properly de-linked from the name that we use out of convenience to refer to the trial structure established by Franks and expanded by Teamsters, Bass Pro’s textual argument cannot hold water. Section 707’s use of the non-term-of-art phrase “pattern or practice” does not limit how the EEOC is permitted to exercise its the authority to attack systemic embedded discrimination—a pattern or practice—a necessary means of the attack being the method of proof referred to in shorthand by a similar name.
No canon of statutory interpretation can overcome the force of that logic. Nonetheless, Bass Pro relies heavily on the notion that permitting the EEOC to utilize the Franks method of proof when it brings an enforcement action under § 706 would render § 707 superfluous. But that is not so; the two sections differ in two respects. First, private individuals have the right to intervene in § 706 actions, but not § 707 actions.[45] Second, § 707 grants the EEOC the right to trial by three-judge panel, but § 706 does not.[46] Even if these differences were ■ “inconsequential procedural technicalities,” any small additional work that separate statutes do is sufficient to satisfy this interpretive canon.[47]
More importantly, the superfluity canon that Bass Pro invokes has less sway here, where “in an effort to ensure that the EEOC could prevent unlawful employment practices, Congress opted to give the EEOC broad and overlapping authority.”[48] Particularly in the area of employment discrimination, “legislative enactments ... have long evinced a general intent to accord parallel or overlapping remedies against discrimination.”[49] And the unique history of §§ 706 and 707, which reveals that each section was originally designed with separate enforcement entities in mind before all responsibility was eventually consolidated in the EEOC,[50] further mitigates concerns over the overlap between the two sections. As Senator Harrison Williams, the floor manager of the 1972 amendments, said:
There will be no difference between the cases that the Attorney General can bring under § 707 as a ‘pattern and practice’ charge and those which the Commission may bring as a result of yesterday’s decision to give the EEOC court enforcement powers. Frankly, the pattern and 'practice section becomes a redundancy in the law.[51]
Bass Pro’s attempt to turn the text of §§ 706 and 707 in its favor by equating unequal language and incorrectly invoking *232 a canon of construction does not withstand scrutiny. Here, the EEOC sues under both sections. Congress gave to the EEOC the duty of enforcing both, and that is what the EEOC is doing now. It would be truly perverse to withhold the remedy of punitive damages from the EEOC when it targets discrimination in its most virulent and damaging form: polices intentionally calculated to exclude protected minorities and perpetrated on a large scale.
III.
Second, Bass Pro argues in the alternative that, even if Congress did grant the EEOC the authority to seek compensatory and punitive damages via the pattern-or-practice model, this grant of authority was unconstitutional. This attack vaguely refers to the principles of Seventh Amendment re-examination and “due process,” but offers no specifics. Indeed it cannot because there is no management plan before us to review. Instead Bass Pro must argue that it would be impossible in any case to manageably try, within the constraints of the Constitution, a pattern-or-practice case seeking compensatory or punitive damages. Under this view, the only enforcement mechanism for the 1991 Civil Rights Act amendments is an individual lawsuit. We cannot agree.
Bass Pro’s reliance on Wal-Mart v. Dukes and Allison v. Citgo Petroleum is misplaced.[52] Both were Rule 23 class actions, and those courts’ holdings were applications of the substantive standards contained in Rule 23.[53] Rule 23 has no force when the EEOC sues; the Supreme Court held in General Telephone that “Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices.”[54] More importantly, the EEOC’s enforcement authority is not tethered to the discrimination victims on whose behalf it seeks relief.[55] This is especially true where, as here, the EEOC seeks to enforce Title VII through punitive damages, which do not compensate individuals but protect the public by deterring future violations.[56] An award of punitive damages under Title VII need not be supported by any other kind of damages; those damages stand alone.[57] This principle negates Bass Pro’s insistence that any trial plan in this case must keep punitive damages linked to compensatory damages, which insistence also rests on the assumption that the EEOC will seek compensatory damages at all. It also ignores the fact that any needed link to awarded damages can here be supplied by back pay awards.[58]
It is not our task to, nor should we, conduct pretrial in the court of appeals. *233 But we reject the notion that this lawsuit cannot be managed and should be shut down at this early stage. Several district courts have entered trial management plans in similar cases where the EEOC has sought aggregated compensatory and punitive relief using the pattern-or-practice model.[59] Yet neither Bass Pro nor the dissent explains why each of those trial plans is unconstitutional.
This effort to confound the entry of a trial plan at this juncture is exposed by the reality that, in addition to the options adopted by those courts, the EEOC may elect from an array of procedures held in the toolkit of district judges. They afford a wide variety of paths available upon remand. There is no dispute that the parties will try the equitable claim for back pay to the court resting upon a finding of systemic discrimination. The EEOC may determine that its charge to enforce Title VII is best served by declining to pursue compensatory damages (similar to the strategy of the private class in Wal-Mart[60]). Given that the back pay case must be tried, the EEOC might seek trial with only one jury.
The EEOC may urge the district court to impanel a single jury to which its pattern-or-practice case will be tried. Turning to its toolkit, the district court, drawing upon F.R.C.P. 49, may present the jury with a series of interrogatories. First, the jury would be asked whether it finds that Bass Pro has engaged in a pattern or practice of discriminating against candidates on the basis of race. Second, the same jury would be asked, only if it answered “yes” to the first question, whether the found pattern or practice was carried out with malice or reckless disregard for the federal rights of those it may have affected within the meaning of § 1981a(b)(l). An answer of “yes” to the second question would decide the EEOC’s eligibility for a punitive damages award, but it remains within the jury’s discretion to make such an award. At this juncture, the jury will have the full picture of the operation and import of any pattern or practice of discrimination.
The EEOC could then request the district court to instruct the jury to determine the appropriate relationship between back pay and any punitive damages it might choose to award; and first to instruct the jury that its found pattern or practice of discrimination may entitle the EEOC to an award of back pay on behalf of some job applicants injured by the pattern or practice, which individuals and amount would be determined later by the court. The EEOC, in its discretion, can distribute any back pay and punitive damages award that it recovers among the *234 victims of the discrimination. With that understanding, the jury could be instructed that, should it elect to award punitive damages, it should state a multiplier to be applied to each individual amount of back pay to compute the award of punitive damages. For example, the jury may choose to award l/2x, lx, 2x, or 3x in punitive damages, with “x” being the amount of back pay. Responsive to any perceived due process constraints, the court could cap the multiplier at 3x or some other appropriate ratio.
This completes the work of the jury. The jury making the punitive damages determination will be keenly familiar with any evidence of how Bass Pro carried out its pattern or practice of hiring discrimination making it well-equipped to determine the EEOC’s eligibility for punitive damages and what multiple of each back pay award is sufficient to punish Bass Pro.
Once the jury trial is complete, it will fall to the court to conduct the necessary individualized inquiries, including Bass Pro’s defense that any given individual was rejected for employ for reasons other than the found pattern or practice of discrimination. The court must determine, perhaps with the assistance of a special master, the amount of back pay lost by each person denied employ by the found pattern or practice. Once that amount is found, the jury’s multiplier is used to calculate the amount of punitive damages recoverable by the EEOC to distribute to the victims of the found systemic discrimination.
This pathway is responsive to Bass Pro’s Seventh Amendment concerns; only one jury is ever impaneled, and it decides all of the issues that Bass Pro is entitled to have a jury decide. The court’s determination of individualized back pay awards does not re-examine any of that jury’s findings; an award of punitive damages is not a “fact” that triggers Seventh Amendment re-examination concerns.[61] And the court considers only each claimant’s entitlement to back pay and the amount of any back pay award—not overlapping with the jury’s findings. Moreover, Bass Pro is, as it rightly insists, afforded the opportunity to present individualized defenses with respect to each and every individual, satisfying the request of Bass Pro and the command of Wal-Mart.[62] This detailing of a possible path the EEOC may urge the district court to follow is an obvious response to the reality that, absent summary judgment, the back pay suit will be tried. There are other paths. For now, the point is: the claim that this suit cannot be tried is not a statement of fact but an advocate’s prayer.
[[Image here]]
Seeking to limit its exposure to liability, Bass Pro asks us to shut down this lawsuit before it even gets off the ground. For the reasons described, its statutory argument is flawed, and its manageability argument is unpersuasive and premature.

. EEOC v. Waffle House, Inc., 534 U.S. 279, 290 n.7, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

. Civil Rights Act of 1991, Pub. L. No. 102-166, § 2(1), 105 Stat. 1071.

. 42 U.S.C. § 1981a(a)(1).

. 432 U.S. 355, 366-67, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

. Id. at 368-72, 97 S.Ct. 2447.

. 446 U.S. 318, 320, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

.Id. at 324, 100 S.Ct. 1698. The Court also noted: "Of course, Title VII defendants do not welcome the prospect of backpay liability; but the law provides for such liability and the EEOC’s authority to sue for it.” Id.

.Id. at 326, 100 S.Ct. 1698.

.Waffle House, 534 U.S. at 288, 122 S.Ct. 754. The dissent hand-waives the force of this inference by stating dismissively that "both General Telephone and Teamsters were decided prior to the 1991 amendments to the Act,” see infra. That ignores the well-settled canon of interpretation that we presume Congress to be aware of judicial interpretation when it enacts legislation, see Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)—a principle that by this statement the Supreme Court placed significant emphasis on with respect to the 1991 civil rights amendments.

. Waffle House, 534 U.S. at 282-84, 122 S.Ct. 754.

. Id. at 296-97, 122 S.Ct. 754.

. Id. at 297-98, 122 S.Ct. 754.

. Id. at 295, 122 S.Ct. 754.

. Id. at 295 n.10, 122 S.Ct. 754.

. 559 F.3d 270, 272 (5th Cir. 2009).

. Id. at 273.

. 437 F.3d 695, 695 (7th Cir. 2006).

. Id.

. Id.

. See infra, notes 35-38 and accompanying text.

. See General Telephone, 446 U.S. at 324, 100 S.Ct. 1698.

. See id.

. Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 255 (codified as amended at 42 U.S.C. § 2000e-2(a)(l)).

. Id., 78 Stat. 258 (codified as amended at 42 U.S.C. § 2000e-5(a)).

. Id., 78 Stat. 258-59 (codified as amended at 42 U.S.C. § 2000e-4(a)-(b)).

. Id., 78 Stat. 260 (codified as amended at 42 U.S.C. § 2000e-5(f)(1)).

. Id., 78 Stat. 261 (codified as amended at 42 U.S.C. § 2000e-6(a)).

. General Telephone, 446 U.S. at 325, 100 S.Ct. 1698 (quoting S. Rep. No. 92-415, p. 4 (1971)).

. Civil Rights Act of 1972, Pub. L. No. 92-261, 86 Stat. 105 (codified as amended at 42 U.S.C. § 2000e-5(f)(l)).

. Id., 86 Stat. 107 (codified as amended at 42 U.S.C. § 2000e-6(c)).

. See supra notes 4-8 and accompanying text.

. Waffle House, 534 U.S. at 288, 122 S.Ct. 754

. Civil Rights Acts of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 1981a(a)(l)).

. 42 U.S.C. § 1981a(d)(1).

. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

. 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

. Id. at 772-73 & n.32, 96 S.Ct. 1251.

. Id. at 750-51, 96 S.Ct. 1251.

. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358-60, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

. Id. at 336 n.16, 97 S.Ct. 1843.

. See, e.g., Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 177 (3d Cir. 2009).

. Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 875-76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

. See Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 149 n.8 (2d Cir. 2012) ("Although the Teamsters framework is not a freestanding cause of action, courts—including the Supreme Court-—sometimes loosely refer to the Teamsters method of proof as a 'pattern-or-practice claim.’ " (citation omitted)).

. Cooper, 467 U.S. at 876 n.9, 104 S.Ct. 2794 (“Although Teamsters involved an action litigated on the merits by the Government as plaintiff under § 707(a) of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class *231 action.”); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 352 & n.7, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

. See § 706(f)(1).

. See § 707(b)

. Scheidler v. Nat’l Org. for Women, Inc., 547 U.S. 9, 21-22, 126 S.Ct. 1264, 164 L.Ed.2d 10 (2006).

. EEOC v. Mavis Disc. Tire, Inc., 129 F.Supp.3d 90, 108 (S.D.N.Y. 2015) (quoting EEOC v. Pitre, Inc., 908 F.Supp.2d 1165, 1173 (D.N.M. 2012)).

. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

. See supra notes 22-33 and accompanying text.

. EEOC v. Gen. Tel. Co. of the Nw., Inc., No. C77-247M, 1977 WL 15420, at *3 (W.D. Wash. Dec. 21, 1977) (citing 118 Cong. Record, p. 4081, February 16, 1972) (emphasis added).

. 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); 151 F.3d 402 (5th Cir. 1998).

. See Wal-Mart, 564 U.S. at 342, 131 S.Ct. 2541 ("We consider whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2).”); Allison, 151 F.3d at 407 ("We therefore affirm and hold that the district court did not abuse its discretion in denying class certification.”).

. General Telephone, 446 U.S. at 323, 100 S.Ct. 1698.

. See Waffle House, 534 U.S. at 287-88, 122 S.Ct. 754; see also General Telephone, 446 U.S. at 326, 100 S.Ct. 1698.

. Waffle House, 534 U.S. at 294-95, 122 S.Ct. 754.

. EEOC v. E.I. Du Pont de Nemours & Co., 480 F.3d 724, 733-34 (5th Cir. 2007); Abner v. Kansas City S. R. Co., 513 F.3d 154, 160 (5th Cir. 2008).

. E.I. Du Pont de Nemours, 480 F.3d at 733-34.

. U.S. Equal Employ’t Comm’n v. Foster Wheeler Constructors, Inc., No. 98 C 1601, 1999 WL 528200 (N.D. Ill. July 13, 1999); E.E.O.C. v. Dial Corp., 259 F.Supp.2d 710 (N.D. Ill. 2003); E.E.O.C. v. Int’l Profit Assocs., Inc., No. 01 C 4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007); E.E.O.C. v. Outback Steak House of Fla., Inc., 576 F.Supp.2d 1202 (D. Colo. 2008); E.E.O.C. v. McCormick & Schmick’s Seafood Rests., Inc., No. WMN-08-984, 2008 WL 10697581 (D. Md. 2008); E.E.O.C. v. Burlington Med. Supplies, Inc., 536 F.Supp.2d 647 (E.D. Va. 2008); E.E.O.C. v. Sterling Jewelers Inc., 788 F.Supp.2d 83 (W.D.N.Y. 2011); Equal Employ’t Opportunity Comm’n v. JBS USA, LLC, 8:10CV318, 2011 WL 13137568 (D. Neb. May 31, 2011); E.E.O.C. v. Pitre, Inc., 908 F.Supp.2d 1165 (D.N.M. 2012); David v. Signal Int’l, LLC, 37 F.Supp.3d 814 (E.D. La. 2013); E.E.O.C. v. Celadon Trucking Servs., Inc., No. 1:12-cv-0275-SEB-TAB, 2013 WL 1701074 (S.D. Ind. April 18, 2013); E.E.O.C. v. Performance Food Grp., Inc., 16 F.Supp.3d 576 (D. Md. 2014); U.S. E.E.O.C. v. PMT Corp., 124 F.Supp.3d 904 (D. Minn. 2015); E.E.O.C. v. Mavis Disc. Tire, Inc., 129 F.Supp.3d 90 (S.D.N.Y. 2015); E.E.O.C. v. Cintas Corp., No.04-40132, 2015 WL 1954476 (E.D. Mich. April 29, 2015).

. Wal-Mart, 564 U.S. at 345, 131 S.Ct. 2541.

. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 437, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

. See Wal-Mart, 564 U.S. at 367, 131 S.Ct. 2541.