**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 14 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PEARL MARKHAM, an individual;
LINDA PARKER, an individual;
GARRELD WRIGHT, an individual,

      Plaintiffs-Appellees,

v.

NATIONAL STATES INSURANCE
COMPANY, a foreign corporation,

      Defendant-Appellant.

Nos. 03-6275 & 03-6304
(D.C. No. CV-02-1606)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **McCONNELL** , **HOLLOWAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The cases are therefore ordered submitted without oral argument.

Defendant National States Insurance Co. (National States) appeals the judgment entered on a jury verdict in favor of plaintiffs Pearl Markham, Linda Parker, and Garreld Wright.  The district court entered judgment for compensatory damages in the amount of $75,000 ($25,000 to each of the three plaintiffs), plus an additional $150,000 for punitive damages, for a total judgment of $225,000.  In addition, the district court granted plaintiffs' request for attorney fees of $103,830 and prejudgment interest of $1,585.  National States filed a notice of appeal from each of those judgments; the two appeals are consolidated.  We exercise jurisdiction over this diversity case under 28 U.S.C. § 1291 and we affirm.  We deny National States' motion to certify a question to the Oklahoma Supreme Court and to stay this appeal.

## I.  Background

The following facts were established at trial, viewing the record in the light most favorable to the jury verdict.  *See Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002).

Plaintiffs' mother, Evaline Wright, age 74, applied for an $8,000 life insurance policy with National States on August 9, 2000.  The application form required medical information for the two years preceding the date of application.

2

She informed the agent that she had had breast cancer, and had been treated with chemotherapy and radiation, but that she had been cancer-free since June 1998.

Mrs. Wright died of ovarian cancer on May 17, 2002. When plaintiffs, as beneficiaries under the policy, sought payment of the policy proceeds, National States denied their claim on the ground that Mrs. Wright had not disclosed all of the facts about her cancer at the time she applied for the policy, including that she had received a radiation treatment on August 13, 1998, four days within the two-year pre-application period, and that she was taking the prescription drug Tamoxifen at the time she applied. Tamoxifen is a medication often prescribed for cancer treatment, R. Vol. III, tab 48, at 160, and is frequently prescribed for patients even after they are cancer-free, *id.* Vol. IV, tab 49, at 384. Mrs. Wright found that it also relieved the symptoms of her arthritis. *Id.* at 339, 381. National States asserted that if it had known about the radiation treatment and the Tamoxifen, it would not have issued the policy.

After the initial denial of their claim, plaintiffs provided National States with a letter from Mrs. Wright's treating physician. He stated that Mrs. Wright had been treated for breast cancer but that she had been cancer-free since June 1998. Plaintiffs maintained that Mrs. Wright's representations on the August 2000 application that she did not have cancer were, therefore, correct.

3

National States, by its claim supervisor Leah Rogers, nevertheless denied the claim on the ground that Mrs. Wright had cancer at the time she applied for the policy. Ms. Rogers did not contact Mrs. Wright's physician to clarify Mrs. Wright's cancer history or to ascertain the purpose of the Tamoxifen therapy, even though she disregarded the physician's letter because it did not mention radiation or Tamoxifen. *Id.* Vol. III, tab 48, at 158-59. Instead, she rescinded the policy based on her own opinion that Mrs. Wright had cancer on the date she applied for the policy and on her opinion that "the information in [the physician's] letter [was] not correct." *Id.* at 159.

Ms. Rogers testified about her training and rescission practices. She participated in all of the decisions to rescind life insurance policies for National States. *Id.* at 100. She was not a physician or a nurse, and she had not taken any seminars or courses on medical conditions or treatment. *Id.* at 101. She handled claims the way National States wanted them to be handled. *Id.* at 100. In deciding to rescind a policy, it was National States' policy to not contact the beneficiaries or the agent. *Id.* at 126. It was the practice to rescind a policy if an answer on the application should have been answered "yes," but was answered "no," regardless of the applicant's intent, and even if the applicant made an honest mistake. *Id.* at 132-33, 138. An applicant's signature was considered a guarantee of correctness, *id.* at 141, even though the application form stated that

4

the representations made on the application were true to the best of the applicant's knowledge and belief. *Id.* Vol. II, tab 28, at 606; *see also* Okla. Stat. tit. 36, § 3609(A) ("All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties."). National States would rescind a policy even if the applicant told the agent of a disqualifying condition. *Id.* Vol. IV, tab 49, at 302.

National States was precluded from rescinding a life insurance policy that had been in effect for at least two years, except for nonpayment of premiums. *See* Okla. Stat. tit. 36, § 4004. Of the policies that could be rescinded, National States rescinded one-third. R. Vol. III, tab 48, at 135-38. According to Ms. Rogers, National States saw no reason to change the current rescission practices, *id.* at 127, and had no plans to change them in the future, *id.* at 180.

Plaintiffs alleged various theories of recovery in their suit against National States, but ultimately submitted to the jury only their tort claim for breach of the insurer's duty of good faith and fair dealing. *See Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977) (recognizing that in Oklahoma "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort"); *accord Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561-62 (Okla. 2004). In a two-part

5

trial before the same jury, the jury first awarded compensatory damages to plaintiffs, and then heard evidence on punitive damages, after which it awarded an additional amount for punitive damages. The additional sums for attorney fees and prejudgment interest were awarded in post-trial proceedings.

On appeal, National States alleges the following errors: (1) the jury instruction which required the jury to find that Mrs. Wright intended to deceive the insurer before the insurer could rescind the policy was contrary to Oklahoma law, (2) the evidence was insufficient to establish a prima facie case of bad faith, (3) the district court admitted irrelevant and prejudicial evidence of rescission files and practices from states other than Oklahoma, and (4) the award of attorney fees and prejudgment interest was contrary to Oklahoma law.

## II. Analysis

There is no dispute that Oklahoma state law controls. In this case based on diversity, we must reach the same conclusion the state's highest court would reach. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

### A. Intent to Deceive

National States challenges part of Jury Instruction No. 10, Bad Faith - Failure to Act in Good Faith and Deal Fairly. R. Vol. I, tab 19, at 196. It instructed the jury that

> an insurance company may rescind an insurance policy for an untrue statement in an insurance application only if the statement was

material to the acceptance of the risk by defendant, or the defendant would not have issued the insurance policy if the true facts had been known, *and the statement was made with an intent to deceive by the insured* .

*Id.* (emphasis added). National States contends that the current state of Oklahoma law does not require an intent to deceive before an insurance company can rescind a policy. We "review a district court's decision to give a particular jury instruction for abuse of discretion; ultimately, however, we apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial." *Osteguin v. S. Pac. Transp. Co.* , 144 F.3d 1293, 1295 (10th Cir. 1998) (citation omitted).

In Oklahoma, a statute, Okla. stat. tit. 36, § 3609, governs representations made in an application for insurance. After considering Oklahoma case law, this court held that "section 3609 requires a finding of intent to deceive before an insurer can avoid the policy." *Hays v. Jackson Nat'l Life Ins. Co.* , 105 F.3d 583, 588 (10th Cir. 1997). National States argues that the more recent case of *Harkrider v. Posey* , 24 P.3d 821 (Okla. 2000), requires that section 3609 be interpreted under common law principles, which, in turn, do not require an intent to deceive.

*Harkrider* is inapposite. It addressed a situation in which an automobile accident victim sought coverage from the tortfeasor's liability insurer, who then attempted to rescind the policy based on a misrepresentation in the application.

7

24 P.2d at 823-24. The Oklahoma Supreme Court was "called upon to consider in the context of § 3609 the distinction between void and voidable contracts." *Id.* at 826. The court then found "[n]othing in the statutory text of § 3609 nor in [Oklahoma] jurisprudence [to] prevent [the court] from interpreting § 3609 in conformity with the general common law of contract which recognizes the distinction between contracts that are void and those that are merely voidable." *Id.*

This case is not concerned with whether the insurance contract between Mrs. Wright and National States was void or voidable. Therefore, we decline National States' invitation to disavow or modify *Hays*. For the same reason, we see no need to certify the question to the Oklahoma Supreme Court. Moreover, we perceive no conflict between *Hays* and other Tenth Circuit case law. The challenged jury instruction correctly stated the applicable law and does not provide a reason to overturn the verdict.

## B. Sufficiency of Evidence on Bad Faith Claim

National States asserts that the evidence was insufficient to establish a prima facie case of bad faith and, therefore, its motion for a directed verdict should have been granted. "When a jury verdict is challenged on appeal, our review is limited to determining whether the record– viewed in the light most favorable to the prevailing party– contains substantial evidence to support the

8

jury's decision." *Bangert Bros. Constr. Co.*, 310 F.3d at 1292 (quotation omitted).

National States argues that the record does not support plaintiffs' claims that it rescinded Mrs. Wright's policy without considering whether she intended to misrepresent her medical condition and without adequately investigating her intent. It maintains that a more in-depth investigation would not have revealed any additional information because the evidence produced at trial did not add to the information Ms. Rogers had available to her at the time she made the decision to rescind the policy.

The proper inquiry is not limited to whether National States had investigated or discerned Mrs. Wright's intent. Rather, "the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment under a policy. . . ." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981). The determination of what is reasonable is for the jury. *See id.*

We conclude that the evidence sufficiently supports the jury's verdict against National States. Plaintiffs demonstrated that (1) National States rescinded one third of the policies that it was not precluded by law from rescinding, (2) it did not consider the applicant's intent or whether any errors were made in good faith, despite its own application form stating that the representations made on the

9

application were true to the best of the applicant's knowledge and belief, (3) Mrs. Wright informed the agent of her cancer history, information which was imputed to National States, and (4) Ms. Rogers, who had no medical training, rejected the treating physician's statement that Mrs. Wright was cancer-free as of June 1998 without attempting to resolve her differing view that Mrs. Wright was still being treated for cancer as of August 2000. Accordingly, we will not disturb the verdict.

### C. Irrelevant and Prejudicial Evidence

National States maintains that the district court erred when it admitted into evidence testimony about the number of claims nationwide it had rescinded over the previous few years, three files pertaining to other rescinded policies from other states, and a market report conducted by the State of Nebraska. We first consider whether National States preserved these alleged errors for review. If it did not, our review is only for plain error. *United States v. Castorena-Jaime*, 285 F.3d 916, 926 (10th Cir. 2002).

National States filed a motion in limine seeking to exclude evidence of other claims. The district court denied the motion, directing the parties to the case of *Vining ex rel. Vining v. Ent. Fin. Group, Inc.*, 148 F.3d 1206, 1218 (10th Cir. 1998). "A pretrial motion in limine to exclude evidence will not always preserve an objection for appellate review." *United States v. Mejia-Alarcon*,

995 F.2d 982, 986 (10th Cir. 1993). Such a motion may preserve the issue for review if it "(1) has been fairly presented to the trial court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 799 (10th Cir. 2001). We hold that National States' motion in limine did not preserve the issue for review because it did not meet these criteria. Assuming the first two factors were met, the district court's ruling was not without equivocation because it did not rule on whether the challenged evidence would be admitted at trial. Consequently, we must consider whether an objection made at trial preserved the issue.

During Ms. Rogers' testimony, plaintiffs sought to introduce Exhibit 80 to show that National States had rescinded 1,232 policies in the previous four and one-half years. National States objected, and when the court asked the grounds for the objection, defense counsel simply responded, "401, 402, and 403." R. Vol. III, at 179-80. We hold that the objection, though far from explicit, was sufficient to preserve the issue of admissibility. Therefore, we review the district court's ruling for an abuse of discretion. *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997).

A valid objection to the admission of evidence must state the specific ground upon which it is based, unless the specific ground is apparent from the

11

context. Fed. R. Evid. 103(a)(1). In this case, National States' counsel did not explain how "401, 402, and 403" applied to the exhibit in question. Consequently, opposing counsel had no opportunity to respond, and the district court could not evaluate the objection. *Cf. Wilson v. Williams*, 182 F.3d 562, 567 (7th Cir. 1999) (requiring specific ground for objection to evidence "else both judge and adversary are sandbagged (and preventable errors occur)"). As a result, our review of the district court's exercise of discretion is moderated by the undeveloped objection. Based on the information before the district court, we find no abuse of discretion in admitting Exhibit 80 because National States made no showing that it was irrelevant or unfairly prejudicial.

In addition, other evidence on the number of policies National States rescinded nationwide was received without objection. Ms. Rogers testified that National States rescinded about one-third of the claims available to be rescinded. R. Vol. III, at 138. Because National States did not interpose an objection at trial, under our plain-error standard, we evaluate whether "(1) the district court erred; (2) the error was plain; (3) the error affected [its] substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Castorena-Jaime*, 285 F.3d at 926. We see no plain error in admitting this testimony. We also note that it diminished any possibly prejudicial

effect of Exhibit 80 because the jury had already received information about the percentage of policies National States had rescinded.

Moreover, National States' argument on appeal is less a challenge to the exhibit's admissibility than a claim that it was lacking in weight and credibility. The weight and credibility due an exhibit are for the jury to decide. *See Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 959 (10th Cir. 2002) ("The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact.") (quotations omitted). Furthermore, the basic purpose of the rules of evidence is to make all evidence admissible, except under certain clear and strong circumstances. Fed. R. Evid. 402 (stating all relevant evidence is admissible, with some exceptions); *id.* Rule 403 (stating relevant evidence may be excluded if unfairly prejudicial, confusing, misleading, or cumulative).

National States also complains that the rescission files and the market report, admitted to show National States' knowledge and intent, were irrelevant and prejudicial.[1] National States objected to the introduction of only one of the

_____

[1] National States suggests that the lack of evidence that it rescinded Oklahoma life insurance policies means that there were no such files. This argument is highly disingenuous in light of the district court's finding that National States willfully refused to produce any Oklahoma rescission files.

13

exhibits, the file from Florida. Therefore, we consider whether the district court committed plain error in admitting the other three challenged exhibits. We conclude that it did not, particularly because they were introduced to rebut the testimony of National States' employees, and National States has not explained why the exhibits were inadmissible for that purpose.

For the same reason, we find no abuse of discretion in the district court's ruling to admit the Florida file. It was offered to rebut Ms. Rogers' testimony that National States would not sell a policy to an applicant who admitted having a prohibited health condition. Again, National States has not argued that the exhibit was improper rebuttal evidence, and we decline to construct an argument for it. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).

National States next asserts that the evidence of its rescissions nationwide was inadmissible to support the award of punitive damages because a "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). The circumstances of this case are not similar to those in *Campbell*. There, the trial was bifurcated and the punitive-damages and liability phases were heard by different juries. *Id.* at 414. The evidence of State Farm's fraudulent nationwide operations was extensive, going back more than twenty years, and it was presented by an expert witness.

14

*Id.* at 415. In contrast, here, the challenged evidence was not limited to the issue of punitive damages, and the same jury determined liability, compensatory damages, and punitive damages. Accordingly, we hold that *Campbell* does not require reversal.

To the extent National States argues on appeal that the procedure for adjudicating a claim for punitive damages under Oklahoma law, *see* 12 Okla. Stat. tit. 23, § 9.1, violates the Due Process Clause of the United States Constitution, we decline to address it because the argument was not first presented to the district court. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003).

## D. Attorney Fees and Prejudgment Interest

Finally, we address National States' challenge to the awards of attorney fees and prejudgment interest. We generally review both types of award for abuse of discretion, except that we apply a de novo review to any statutory interpretation. *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1131 (10th Cir. 2001) (attorney fees); *Bangert Bros. Constr. Co.*, 310 F.3d at 1297 (prejudgment interest).

By statute, "costs and attorney fees shall be allowable to the prevailing party" in insurance-contract litigation. Okla. Stat. tit. 36, § 3629(B). "Recovery authorized by § 3629(B) embraces both contract- and tort-related theories of

15

liability so long as the 'core element' of the damages *sought* and *awarded* is composed of the insured loss." *Taylor v. State Farm Fire & Cas. Co.*, 981 P.2d 1253, 1256 (Okla. 1999). National States argues that the core of the jury verdict was not the insurance proceeds, and, therefore, plaintiffs were not entitled to attorney fees under section 3629(B). We reject this position because we agree with the district court that "the indemnity for loss under the subject life insurance policy was the centerpiece of plaintiffs' bad faith action," R. Vol. I, tab 25, at 292, and we adopt the district court's reasoning for its conclusion, *id.* at 291-92.

National States asserts that the prejudgment interest award under section 3629(B) was improper because it was impossible to determine that the policy benefits were part of the jury verdict. The district court awarded prejudgment interest on only the amount of the insured loss – $8,000. Again, we agree with the district court's holding and reasoning that the award of prejudgment interest was appropriate. *Id.* tab 25, at 295-96. Accordingly, we affirm the awards of attorney fees and prejudgment interest pursuant to section 3629(B) and *Taylor*.

16

### III. Conclusion

National States' motion to certify a question to the Oklahoma Supreme Court and to stay this appeal is denied. The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge