Babcock, District Judge.
This matter is before me on Plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") Motion for Bifurcation. ECF No. 136. The parties agree that bifurcation should occur, but disagree as to the scope. After considering the parties' arguments through briefing and a hearing that occurred on July 24, 2018, for the reasons below, I GRANT the Motion in part.
I. BACKGROUND
Plaintiff initiated this case as a civil enforcement action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Compl., ECF No. 1. The case mainly regards two of Defendant's policies surrounding medical leave, along with other aspects of the ADA. Id. Plaintiff alleges Defendant's: (1) failure to accommodate disabilities; (2) disparate treatment based on disability or the need to provide accommodation; (3) use of discriminatory standards, criteria, or methods of administration; and (4) retaliation. Id. At the time of Plaintiff's Reply, it has identified 58 potentially aggrieved individuals. Reply, ECF No. 150 at 7.
The parties agree that this lawsuit concerns an alleged pattern or practice of discrimination. ECF No. 136 at 2; Resp., ECF No. 145 at 1. They also agree that this case should be bifurcated, but disagree on when certain issues should be presented in the case and on the scope of discovery pursuant to bifurcation. ECF No. 145 at 1; ECF No. 150 at 1.
Concerning substantive issues in trial, the parties mainly disagree on whether the claim for punitive damages should be presented in the first or second phase of the trial. ECF No. 145 at 8; ECF No. 150 at 8. The issues on discovery include: (1) whether discovery for the first phase of the trial should be limited only to discovery that is already completed; (2) whether expert discovery should be limited to only that regarding the aggrieved individuals testifying in the first phase of the trial; and (3) whether Plaintiff must abide by the current deadline for expert witness disclosures. ECF No. 145 at 5-6; ECF No. 150 at 3-7. Related to this last discovery issue, after filing the current Motion, Plaintiff filed a motion to amend the scheduling order to extend the deadline for expert disclosures. ECF No. 143.
*1103 II. LAW
A. Federal Rule of Civil Procedure 42(b)
Under Federal Rule of Civil Procedure 42(b), a court may order separate trials for "convenience, to avoid prejudice, or to expedite and economize" if separate issues exist in the same case. "District courts have 'broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.' " Anaeme v. Diagnostek, Inc. , 164 F.3d 1275, 1285 (10th Cir. 1999) (quoting Easton v. City of Boulder, Colo. , 776 F.2d 1441, 1447 (10th Cir. 1985) ).
B. Pattern-or-practice discrimination
Pattern-or-practice discrimination cases differ in focus than the more common cases of individualized discrimination. Thiessen v. Gen. Elec. Capital Corp. , 267 F.3d 1095, 1105 (10th Cir. 2001). "[T]he initial focus in a pattern-or-practice case is not on individual employment decisions, 'but on a pattern of discriminatory decisionmaking.' " Id. (quoting Cooper v. Fed. Reserve Bank of Richmond , 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) ). Pattern-or-practice cases are typically analyzed under the structure of International Brotherhood of Teamsters v. United States , 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Id.
Under Teamsters , these cases are tried in separate phases. 431 U.S. at 360, 97 S.Ct. 1843. The plaintiff has the burden in the first phase of trial ("Phase I") "to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." Id. During Phase I, the plaintiff is not required to produce evidence proving that each aggrieved individual was indeed a victim of the employer's policy. Thiessen , 267 F.3d at 1106 (quoting Teamsters , 431 U.S. at 360, 97 S.Ct. 1843 ). The plaintiff must merely prove that the discriminatory policy existed. Id. The burden then shifts to the employer, who must demonstrate that the plaintiff's prima facie case is "inaccurate or insignificant." Id. Failure to prove this allows a finder of fact to "conclude 'that a violation has occurred' and the trial court can award prospective equitable relief." Id. (quoting Teamsters , 431 U.S. at 361, 97 S.Ct. 1843 ).
If successful in Phase I, in the second phase of the trial ("Phase II") each individual plaintiff must argue he or she was victim to the discriminatory policy with the "significant advantage" of a presumption that the employer discriminated against them. Id. If the plaintiff did not succeed in Phase I, he or she may continue in Phase II, albeit without the presumption of a discriminatory policy, for example using the burden-shifting framework pursuant to McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Id. at 1106 n.8 (citing Cooper , 467 U.S. at 878-880, 104 S.Ct. 2794 ); see DePaula v. Easter Seals El Mirador , 859 F.3d 957, 969 (10th Cir. 2017) (explaining the McDonnell Douglas burden-shifting framework).
III. ANALYSIS
A. Punitive damages
The parties agree to bifurcate the trial, but most vociferously disagree on at what point the issue of punitive damages should be raised. In its Motion, Plaintiff argues that a bifurcation modeled after that in Teamsters may include a determination of punitive damages in the Phase I trial. ECF No. 136 at 10. Plaintiff cites to a variety of courts that allowed for a basic structure of bifurcation where an initial jury hears evidence regarding liability and punitive damages in the context of a pattern-or-practice claim. Id. at 10-11 (citing *1104 EEOC v. Outback Steak House of Fla., Inc. , 576 F.Supp.2d 1202, 1206 (D. Colo. 2008) and EEOC v. Dial Corp. , 259 F.Supp.2d 710, 711-14 (N.D. Ill. 2003) ).
Plaintiff suggests that the Phase I jury would initially "determine whether the defendant had engaged in a pattern or practice of discrimination," and if the jury did so determine, it "would then reconvene to hear evidence regarding whether the defendant acted with malice or reckless indifference to the employees' rights in engaging in a pattern or practice of discrimination, deciding whether punitive damages are appropriate, and if so, the amount necessary to deter and punish the defendant." Id. at 10-11 (citing EEOC v. Dial Corp. , 259 F.Supp.2d at 713 ). Then, a "separate jury or juries would later resolve the issue of compensatory damages for individual claimants, as well as an advisory amount of punitive damages for each claimant." Id. at 11 (citing EEOC v. Dial Corp. , 259 F.Supp.2d at 714-16 ). After conclusion of the Phase II verdicts, the court would determine the distribution of damages "guided by the Phase II jury verdicts, the gross punitive damages award[ed] by the Phase I verdict, and the statutory damage limitations in 42 U.S.C. § 1981a." Id. (citing EEOC v. Dial Corp. , 259 F.Supp.2d at 714-16 ).
Plaintiff argues that the punitive damage determination should not be evaluated relative to each victim, but should be considered at the same time as the determination concerning whether Defendant had a pattern or practice of discrimination. Id. at 11-12. Plaintiff argues this is the case because the same evidence would be used for both determinations, and thus it is appropriate to have both issues presented in the same phase of trial. Id. Plaintiff argues that this aligns with Tenth Circuit precedent "to allow policies and practices to be admissible in support of an award for punitive damages, specifically because the same jury was tasked with determining defendant's liability and eligibility for punitive damages." Id. at 12.
Defendant responds that Plaintiff necessarily cannot seek compensatory and punitive damages for pattern-or-practice claims. ECF No. 145 at 8. Defendant states that the statute authorizing Plaintiff to enforce the ADA only allows for compensatory and punitive damages on behalf of individuals alleging intentional discrimination, not those alleging pattern-or-practice claims. Id. Namely, Defendant alleges that the authorization exists in 42 U.S.C. § 12117(a), which itself derives its "powers, remedies, and procedures" from certain sections of Title VII of the Civil Rights Act of 1964 ("Title VII"). Id. In turn, Defendant argues that Title VII, under 42 U.S.C. § 2000e-5 (known as "§ 706"), allows for compensatory and punitive damages to be brought only in claims regarding intentional discrimination. Id. Defendant contrasts § 706 with 42 U.S.C. § 2000e-6 (known as "§ 707"), which authorizes the EEOC to investigate and act on a charge of pattern-or-practice discrimination, but does not explicitly authorize the recovery of compensatory and punitive damages. Id.
Defendant looks to EEOC v. JBS USA, LLC , No. 10-CV-02103-PAB-KLM, 2011 WL 3471080 (D. Colo. Aug. 8, 2011) to support the proposition that the EEOC may not pursue punitive or compensatory damages for individuals pursuant to its pattern-or-practice claims because compensatory and punitive damages are only available in claims under § 706. Id. at 8-9.
In its Reply, Plaintiff argues that Defendant misunderstands the basis on which Plaintiff initiated the case. ECF No. 150 at 9. Plaintiff states that there are no § 707 claims in the current case and that its Complaint "alleges the Court's jurisdiction and the EEOC's authority to sue arise under Section 107(a) of the ADA, incorporating *1105 Section 706(f)(1) and (6) of Title VII." Id. ; ECF No. 1 at 1, 3. Plaintiff further clarifies that Defendant would be incorrect to argue that Plaintiff cannot bring a pattern-or-practice claim under § 706. Id. (citing Gen. Tel. Co. of the Nw. v. EEOC , 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ).
1. Punitive damages under the ADA
Punitive damages exist to punish prohibited conduct and deter its repetition. Medlock v. Ortho Biotech, Inc. , 164 F.3d 545, 551 (10th Cir. 1999) (quoting Pacific Mut. Life Ins. Co. v. Haslip , 499 U.S. 1, 21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) ).
A plaintiff pursuing an ADA claim may seek "punitive damages if his employer acted with 'malice or with reckless indifference to the plaintiff's federally protected rights.' " EEOC v. Heartway Corp. , 466 F.3d 1156, 1169 (10th Cir. 2006) (quoting Bartee v. Michelin N. Am., Inc. , 374 F.3d 906, 914 (10th Cir.2004) ); see 42 U.S.C.A. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."). "To satisfy this standard, 'an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law.' " Dilley v. SuperValu, Inc. , 296 F.3d 958, 966 (10th Cir. 2002) (quoting EEOC v. Wal-Mart Stores, Inc. , 187 F.3d 1241, 1244 (10th Cir. 1999) ).
2. Plaintiff's case was initiated under § 706
This case was initiated pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706. ECF No. 1 at 3. Indeed, there is no reference to § 707 in Plaintiff's Complaint. ECF No. 1. Therefore, I deny Defendant's request that I rely upon EEOC v. JBS USA, LLC because the current case does not contain any interplay between §§ 706 and 707. 2011 WL 3471080, at *4.
3. The distinction between §§ 706 and 707
Even though only § 706 is implicated, §§ 706 and 707 are closely connected and an analysis of their differences should provide clarity. Under § 706, the EEOC may act on behalf of individuals who file charges with the agency alleging that an employer engaged in an unlawful employment practice. 42 U.S.C. § 2000e-5(b). Under § 707, the EEOC may act where it "has reasonable cause to believe that [an employer] is engaged in a pattern or practice" of discrimination and does not require the filing of any individual charge. 42 U.S.C. § 2000e-6.
Another difference between §§ 706 and 707 are the remedies available. Under § 706, compensatory and punitive damages may be made by a "complaining party," and that term includes both private plaintiffs and the EEOC. EEOC v. Waffle House, Inc. , 534 U.S. 279, 287, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (quoting 42 U.S.C. § 1981a(a)(1) ). When Congress amended Title VII to add these provisions, it did not include § 707. 42 U.S.C. § 1981a(a)(1).
I understand how Defendant may have assumed this case proceeded under § 707 since Plaintiff alleged a "pattern or practice of discrimination," and thus would not have explicit grant for compensatory and punitive damages. ECF No. 1 at 1. Despite this, cases proceeding under § 706 may allege a pattern-or-practice discrimination claim without necessarily implicating § 707.
"Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its *1106 authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." Gen. Tel. Co. of the Nw. v. EEOC , 446 U.S. at 324, 100 S.Ct. 1698. "The language of the Supreme Court indicates that while securing relief for a group of aggrieved individuals is a paramount purpose of [§ 706], it is not the sole purpose-but rather one goal 'among others.' " EEOC v. United Parcel Serv. , 860 F.2d 372, 375 (10th Cir. 1988) ; accord EEOC v. Jetstream Ground Servs., Inc. , 134 F.Supp.3d 1298, 1327 (D. Colo. 2015) (holding that § 706 "authorizes the EEOC to bring suit in its own name, on behalf of a 'person or persons aggrieved' by the employer's unlawful employment practice").
The court in Serrano v. Cintas Corp. provided analysis for the distinction between § 706 and § 707 when it held that "relevant Supreme Court precedent suggests that the exclusion of pattern-or-practice language from § 706 does not mean that the EEOC may utilize a pattern-or-practice theory only when bringing suit under § 707." 699 F.3d 884, 894 (6th Cir. 2012). The Serrano court explained how § 707 is not rendered redundant if the EEOC may use § 706 to bring a case under the Teamsters framework. Id. The court explained that "an important distinction prevents § 707 from becoming superfluous even if Teamsters applies in the § 706 context: § 707 permits the EEOC to initiate suit without first receiving a charge filed by an aggrieved individual, as it must when initiating suit under § 706." Id.
The court continued that it is reasonable "to conclude that the presence of a previously filed charge by an aggrieved person was the distinction upon which Congress wished the availability of particular remedies to rise and fall" and in fact, "this is arguably the most logical interpretation of congressional intent given that the need for compensatory and punitive damages diminishes when the EEOC is not seeking compensation for a specific victim of discrimination." Id.
As such, this case proceeds under the guidance of § 706.
4. Punitive damages in Phase I
There is considerable variability among courts concerning whether bifurcated cases may have a determination regarding punitive damages introduced during the first phase of trial. Neither the Supreme Court nor the Tenth Circuit has ruled directly on this issue.
i. Authority mandating that a determination of punitive damages is not heard before other damage evaluations
On one end of the spectrum are courts that order punitive damages to be discussed wholly in conjunction with other damages in later phases of trial. In EEOC v. Sterling Jewelers Inc. , the second trial and discovery phase addressed "issues concerning each class member's claim for relief, including whether [the defendant] can meet its burden of rebuttal as to each class member, and if not, the remedies to which that class member is entitled, including back pay, front pay, and compensatory and punitive damages, if any." 788 F.Supp.2d 83, 92 (W.D.N.Y. 2011). In Sterling , the EEOC argued that judicial economy-due mainly to duplicative evidentiary issues-meant that punitive damages should be determined in the first phase of trial. Id. at 88. The defendant countered that this scheme would violate its due process rights with respect to the Supreme Court's decision in State Farm Mutual Auto. Ins. v. Campbell , 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Id.
In State Farm , the Court explained the awarding of punitive damages must confine to "procedural and substantive constitutional *1107 limitations" and "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and the general damages recovered." Id. (quoting State Farm Mutual Auto. Ins. v. Campbell , 538 U.S. at 426, 123 S.Ct. 1513 ). "In evaluating the reasonableness of a punitive damages award, 'it should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if defendant's culpability, after having paid compensatory damages , is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.' " Id. (quoting State Farm Mutual Auto. Ins. v. Campbell , 538 U.S. at 419, 123 S.Ct. 1513 ) (alterations omitted) (emphasis in original).
An onus of this analysis is to be sure that the punitive damages awarded are "reasonable and proportionate" to the general damages recovered. State Farm Mutual Auto. Ins. v. Campbell , 538 U.S. at 426, 123 S.Ct. 1513 ; Lompe v. Sunridge Partners, LLC , 818 F.3d 1041, 1063-65 (10th Cir. 2016). A federal court must "consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418, 123 S.Ct. 1513.
The court in Sterling found that it would violate the Supreme Court's edict if the amount of punitive damages to be awarded is determined before the decision "as to the number of class members adversely affected by the discriminatory practice." EEOC v. Sterling Jewelers Inc. , 788 F.Supp.2d at 89. This is because "a finding of liability at the conclusion of [Phase I] does not necessarily entitle all (or even any) members to compensatory damages," but merely entitles them to a presumption that an adverse employment decision regarding the aggrieved individual was made pursuant to the challenged policy. Id.
Thus, the court ruled that a punitive damage determination should occur with the fact-specific individual determinations made in the later phases of trial. Id. at 91-92. Other courts have reasoned similarly. See e.g. Allison v. Citgo Petroleum Corp. , 151 F.3d 402, 418 (5th Cir. 1998) (holding that "punitive damages must be determined after proof of liability to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage"); EEOC v. Performance Food Grp., Inc. , 16 F.Supp.3d 576, 581-82 (D. Md. 2014) (agreeing with the court's reasoning in Sterling ); EEOC v. Wal-Mart Stores, Inc. , No. 6:01-CV-339-KKC, 2008 WL 11344853, at *3 (E.D. Ky. Apr. 7, 2008) (holding that the court is not "mandated by any controlling case law or overarching Constitutional principles" in exercising its discretion to try the issue of punitive damages "after the class-wide 'pattern or practice' liability phase, and by a separate jury"); EEOC v. Int'l Profit Assocs., Inc. , No. 01 C 4427, 2007 WL 3120069, at *11 (N.D. Ill. Oct. 23, 2007) ("[T]he jury will consider punitive damages at the individual stage, and will make a determination as to whether [the defendant] was reckless or malicious with respect to the federal rights of each individual claimant.").
ii. Authority mandating that a determination (but not award) of punitive damages may be heard before other damage evaluations
In EEOC v. Outback Steak House of Fla., Inc. , the court found that the finder of fact in the first phase of trial should determine if a plaintiff is eligible for punitive *1108 damages and the assessment of the amount of punitive damages, if any, should be decided concurrent to that of compensatory damages in later phases. 576 F.Supp.2d at 1207.
The court in Outback focused its analysis on the distinction between a "class's eligibility for award of punitive damages with the issue of determination of the amount of punitive damages in individual cases." Id. at 1205 (quotations omitted). The court noted that " 'the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant,' and thus the focus of a punitive damages claim is 'not on the facts unique to each class member, but on the defendant's conduct toward the class as a whole.' " Id. (quoting Dukes v. Wal-Mart Stores, Inc. , 222 F.R.D. 137, 172 (N.D. Cal. 2004) (alterations omitted) ).
The court added that the Tenth Circuit has "allowed the same jury to determine defendant's liability and plaintiff's eligibility for punitive damages." Id. (citing Markham v. Nat'l States Ins. Co. , 122 Fed.Appx. 392, 399 (10th Cir. 2004) ) (emphasis in original). In agreeing with the plaintiff, the Outback court pointed to judicial efficiency, because the evidence needed to establish liability for punitive damages significantly overlapped with the evidence needed to prove a pattern or practice of discrimination. Id.
Finally, the court found that this would not violate the due process considerations in the Supreme Court's holding in State Farm because "the determination of whether Plaintiffs are eligible for punitive damages-in Phase I-is independent from assessing the amount of punitive damages each individual is entitled to, which will take place in Phase II." Id. at 1206-07.
Other courts have agreed with the court in Outback. EEOC v. Cintas Corp. , No. 04-40132, 2015 WL 1954476, at *5 (E.D. Mich. Apr. 29, 2015) ; EEOC v. Pitre, Inc. , 908 F.Supp.2d 1165, 1178 (D.N.M. 2012) ; see also Ellis v. Costco Wholesale Corp. , 285 F.R.D. 492, 542 (N.D. Cal. 2012) (holding that the availability of punitive damages should be adjudicated in first phase of trial and the determination of the aggregate amount and individual distribution of punitive damages should be reserved for the second phase).
iii. Authority mandating that an award of punitive damages may be heard before other damage evaluations
On the other end of the spectrum, and what Plaintiff suggests, is the model used by the court in EEOC v. Dial Corp , 259 F.Supp.2d at 710. The defendants in Dial were accused of a pattern-or-practice of sexual harassment. Id. at 711. The Dial opinion was written regarding a motion for reconsideration due in part to the Supreme Court's decision in State Farm. Id. at 712.
The court found that "Phase I should result in a finding by the jury of whether and when a pattern or practice of tolerating sexual harassment existed." Id. at 713. The court reasoned that the evidence to support the claim of such a pattern or practice necessarily will include some episodes that may tend to show whether the pattern or practice was engaged in "with malice or reckless indifference to the federally protected rights" of aggrieved individuals. Id. As such, the same jury that decides the pattern-or-practice issue should decide whether punitive damages should be awarded-and if so, the amount rewarded-to the group as a whole. Id. 712-14.
If the first jury found that "tolerance of a pattern or practice of sexual harassment was done with malice or reckless indifference," the court ruled that at a later trial phase, a new jury "should also arrive at an amount for punitive damages for each *1109 member of the group triable to that jury." Id. at 714. The court recognized that there existed a potential that punitive damages could be awarded by juries in two different phases of the trial, but dealt with this by stating that "[u]ltimately, it is the responsibility of the trial judge, as well as the appellate judges, to control punitive damage awards." Id. (citing cases).
Regarding the planned bifurcation's potential inconsistency with the Supreme Court in State Farm , the Dial court noted that the Supreme Court "does not say that a Phase I jury cannot return a verdict for punitive damages before compensatory damages have been awarded," but merely that "[g]uideposts were laid down by the Court for the imposition of punitive damages to 'ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.' " Id. at 713 (quoting State Farm Mutual Automobile Ins. Co. v. Campbell , 538 U.S. at 426, 123 S.Ct. 1513 ).
I agree with the Dial court's reasoning in that it encourages judicial efficiency, most closely aligns with the aims of punitive damages, and respects Supreme Court precedent. Therefore, the determination of whether Defendant is liable for punitive damages and the actual amount of punitive damages awarded, if any, will occur in Phase I.
B. Discovery issues
The parties offer numerous issues regarding the bifurcation of discovery. Pursuant to the Order of Reference (and subsequent reassignment), discovery matters are referred to Magistrate Judge Varholak. ECF Nos. 17 and 35. As such, the issues pertaining to the bifurcation of discovery shall be decided by Magistrate Judge Varholak. The parties may supply Magistrate Judge Varholak with updated briefing congruent to this Order.
C. Non-contested issues
There are two non-discovery related issues-besides the issue of bifurcation itself-that appear uncontested. First, Defendant "opposes any request by the EEOC to include its fourth cause of action for retaliation in Phase I." ECF No. 145 at 9. To this, Plaintiff states that there is "no disagreement that the retaliation claim should not be included in the Phase I trial because it is not alleged as a pattern or practice and depends on individual-specific facts." ECF No. 150 at 3.
Next, in its purposed bifurcation approach, Plaintiff states that "it may be appropriate for the Phase I jury to decide the EEOC's third claim alleging discriminatory standards, criteria, or methods of administration." ECF No. 136 at 4. As noted in Plaintiff's Reply, Defendant does not dispute this suggestion. ECF No. 150 at 3.
IV. CONCLUSION
For the foregoing reasons, it is
ORDERED that the trial of this case shall be bifurcated into two phases as follows. During Phase I of the trial, the EEOC shall have the burden to demonstrate that Defendant has a pattern or practice of unlawful discrimination, and if so, whether the alleged pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities. If it is found that the alleged pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities, an advisory amount of punitive damages shall be awarded. In Phase I, it will also be decided whether Defendant's policies were a standard, criteria, or were administered in a manner that has the effect of discrimination on the basis of disability. Phase I shall be tried to a jury, with the Court determining whether it is *1110 appropriate to order any prospective relief based upon the jury's finding.
During Phase II, a new jury (or juries) will decide all individual claims and resultant damages, including claims of retaliation. If the Phase I jury finds that Defendant engaged in a pattern or practice of discrimination, there will be a presumption that any adverse actions regarding the individual claimants were part of the pattern or practice of discrimination. If the Phase I jury does not find that Defendant engaged in a pattern or practice of discrimination, individual claimants will not be afforded the presumption. After the Phase II trial (or trials) occur, the court will allocate and adjust the damages awarded to the aggrieved individuals, including any punitive damages awarded in Phase I, pursuant to statutory limits.